UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| William Campbell, | Case No. 2:23-cv-01375-CDS-NJK |
| Plaintiff | **Order Granting Defendant's Motion for Summary Judgment and Closing Case** |
| v. | |
| University Medical Center, | [ECF No. 25] |
| Defendant | |

This is a disability, race, and age discrimination action brought by pro se plaintiff William Campbell against his former employer, University Medical Center (UMC). On April 19, 2024, UMC filed a motion for summary judgment, arguing that Campbell's claims fail as a matter of law. Mot. for summ. j., ECF No. 25. Campbell opposes the motion.[1] Opp'n, ECF No. 29. This matter is now fully briefed. *See* Reply, ECF No. 30. For the reasons set forth herein, UMC's motion for summary judgment is granted.

I.   **Legal standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is material if it could affect the outcome of the case. *Id.* at 249. At the summary

---

[1] UMC argues that Campbell's opposition was untimely. The opposition to the summary judgment motion was due May 13, 2024. Min. order, ECF No. 26. Campbell did not file his opposition until May 14, 2024. Given Campbell's pro se status, the court declines to strike Campbell's opposition for being one day late.

judgment stage, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment in their favor bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## II.    Summary of the allegations

As set forth in his complaint, Campbell alleges UMC discriminated against him based on his disability, his race, and his age, and because of that discrimination, he was terminated from his position within UMC's IT Office.[2] *See* Compl., ECF No. 3. Specifically, Campbell alleges that: (1) UMC failed to engage in the interactive process with him as required under the ADA and that UMC failed to provide an accommodation for his disability (Claim I); (2) after engaging in protected activity by requesting a medical accommodation, UMC retaliated against him (Claim II); (3) UMC discriminated against him because he is Black and failed to investigate his discrimination claim (Claim III and IV) and has similarly discriminated against other former Black employees (Claim III); and (4) UMC discriminated against him because of his age (Claim V). *Id* at 3–8. UMC refutes Campbell's allegations. Answer, ECF No. 9.

---

[2] Unless otherwise noted, citations to the complaint and/or answer do not serve as a finding of facts, but only to provide background information.

## III. Discussion

UMC argues they are entitled to summary judgment on all claims because the evidence demonstrates that Campbell was *terminated* "as a result of his own actions," based on Campbell's failure to respond to discovery requests, including requests for admissions (RFAs). ECF No. 25 at 2. UMC argues that it is "an acute care hospital with most [employees] working on-site, with limited exception made for remote workers, even in the I.T. department." ECF No. 25 at 3. It argues that Campbell was terminated for being a sub-par performer and violating numerous policies,[3] not because of any alleged discrimination based on disability, race, or age. *Id.* at 3–4. It further argues that employees were able to work remotely during the COVID-19 pandemic but in early 2021, when virus transmission rates in the community decreased, UMC employees were ordered to return to the office. *Id.* at 3. Campbell was given two extensions to UMC's return to office requirement. *See* Def.'s Ex. B, Emails discussing Campbell's request for a telework accommodation and Campbell's two extensions from the work-to-work requirement, ECF No. 25-2 at 7–9. Finally, UMC argues that because Campbell failed to respond to its RFAs,[4] those matters are deemed admitted. ECF No. 25 at 2.

In opposition, Campbell argues that the summary judgment motion should be denied because he was discriminated against by UMC. *See generally* ECF No. 29. Campbell does not provide any points and authorities or any exhibits or affidavits in support of his opposition. *Id.*

As a threshold matter, the court addresses Campbell's failure to respond to UMC's RFAs. Federal Rule of Civil Procedure 36(a)(3) states that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." If admitted, the matter "is conclusively established unless the court, on motion,

---

[3] *See* Def.'s Ex. E, UMC Employee Performance Improvement Plan (PIP) for Campbell, ECF No. 25-5; Def.'s Ex. H, UMC Corrective Counseling Notice for Campbell dated Oct. 15, 2021, ECF No. 25-8 at 3; Def.'s Ex. I, Campbell Case Summary Action Log and Second Corrective Counseling Notice dated Nov. 3, 2021, ECF No. 25-9.
[4] *See* Def.'s Ex. A, Def.'s Requests for admission, ECF No. 25-1.

permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). That same rule also "permits the district court to exercise its discretion to grant relief from an admission made under Rule 36(a) only when (1) the presentation of the merits of the action will be subserved, and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (internal quotation marks and citations omitted); Fed. R. Civ. P. 36(b). Under the second prong of this test, "[t]he party relying on the deemed admission has the burden of proving prejudice." *Id.* at 622 (citing Fed. R. Civ. P. 36(b)). Campbell does not dispute that he failed to respond to the RFAs, rather, he attempts to shift the blame for his lack of response by claiming UMC has failed to respond to his discovery requests. ECF No. 29 at 1. Because Campbell is pro se, the court liberally construes this claim as a motion to compel. *See Hamilton v. United States*, 67 F.3d 761, 764 (9th Cir. 1995) (directing courts to construe pro se pleadings liberally). However, "[a]lthough pro se, [Campbell] is expected to abide by the rules of the court in which he litigates." *Carter v. Comm'r*, 784 F.2d 1006, 1008 (9th Cir. 1986). In the District of Nevada, any filed motion "must be supported by a memorandum of points and authorities." LR 7-2(a). Campbell failed to support his motion to compel with a memorandum of points and authorities; instead, he made an unsupported allegation that UMC failed to comply with his own discovery requests. "The failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion." LR 7-2(d). Consequently, Campbell's failure to file a memorandum of points and authorities in support of his motion to compel constitutes a consent to the denial of the motion under Local Rule 7-2(d). It is denied accordingly.

Because "[a]ny matter admitted under this rule is conclusively established unless the Court on motion permits withdrawal or amendment of the admission," Fed. R. Civ. P. 36(a), and there is no pending motion to withdraw or amend Campbell's admissions, the RFAs filed as

Defendant's Exhibit A (ECF No. 25-1 at 3–9) are deemed conclusively established.[5] Consequently, based on Campbell's admissions and the other evidence provided by UMC, together with the lack of evidence provided to refute UMC's claims, each of Campbell's claims fail as a matter of law.

### A. UMC is entitled to summary judgment on Campbell's ADA violation claim.

Campbell alleges that UMC failed to engage in the interactive process with him as is required under the ADA, and further, that UMC failed to provide an accommodation for his disability. ECF No. 3 at 3–4. First, under the ADA, any employer's failure to provide a reasonable accommodation to a qualified individual with a disability[6] constitutes discrimination. 42 U.S.C. § 12112(b)(5)(A); *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1232 (9th Cir. 2003). "The term 'reasonable accommodation' may include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . training materials or policies, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9); *see also* 29 C.F.R. § 1630.2(o) (same). If an employee requests an accommodation, "the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *EEOC v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110 (9th Cir. 2010) (internal citation omitted). This interactive process requires: "(1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Id.* at 1110–11; *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). If a defendant fails to engage in an interactive process, summary judgment is available only if a reasonable finder of fact has no choice but to conclude that there would have been no reasonable accommodation. *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006). However, there is not an independent

---

[5] The court notes that Campbell filed a motion to compel (ECF No. 27), however that motion was denied as untimely. Order, ECF No. 28. Campbell did not appeal that decision.

[6] There does not appear to be any disagreement that Campbell's migraine condition constituted a disability as defined by the ADA. *See* 42 U.S.C. § 12102(2).

cause of action under the ADA for failing to engage in an interactive process. *See, e.g.*, *Kramer v. Tosco Corp.*, 233 F. App'x. 593, 596 (9th Cir. 2007); *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 292 (7th Cir. 2015). Rather, an employer who fails to engage in the interactive process in good faith faces "liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137–38 (9th Cir. 2001).

There is no dispute Campbell had a disability based on his migraine condition. *See* Def.'s Ex. C, Letter from Campbell's doctor, ECF No. 25-3; ECF No. 25-4 at 5.[7] Rather, UMC's argues that they are entitled to summary judgment on Campbell's ADA claim because the evidence shows that it complied with the ADA's requirement to engage with Campbell to accommodate his disability (the migraine condition). ECF No. 25 at 6–7. I agree. The emails provided by UMC show that it first accommodated Campbell by extending his ability to telework twice after employees were directed to return to work. *See* ECF No. 25-2 at 8–9. Those same emails reveal that UMC's Human Resources department disclosed that after the second extension, Campbell was (1) asked for documentation of the medical impairments he was suffering from to ensure compliance with the ADA and to address an accommodation request, and (2) was also provided additional information regarding taking FMLA to allow him time to address his medical concerns. *Id.* at 3. There is no evidence before the court that Campbell provided the requested medical documentation. Instead, on April 12, 2021, Campbell emailed the human resources department and asked to move to another cubicle for medical reasons. *Id.* at 2. The human resources representative, Anna Caputo, replied within hours and advised Campbell that they would need to discuss his request if it was for medical reasons, to which Campbell responded "Ok – thank you." *Id.* Campbell also submitted an email request to telework. Def.'s Ex. 3, ECF No. 25-3 at 2–3. Between April and June of 2021, Campbell and UMC's human resources

---

[7] Exhibits C and D (ECF Nos. 25-3 and 25-4) violate Local Rule IC 6-1 as they contain Campbell's personal-data identifiers. Defendant must file corrected images of the exhibits, with the personal identifying information redacted, within forty-eight hours of this order. The corrected, redacted versions must be filed using the "notice of corrected image" event to link them to the existing filings.

exchanged several emails regarding Campbell's accommodation request, the medical documentation regarding Campbell's medical condition, exploring using FMLA, and other accommodations other than remote work (such as using noise cancelling headphones). Def.'s Ex. D, ECF No. 25-4. One email discusses a meeting between Campbell and the human resources representative, Caputo. Following that meeting, on June 14, 2021, Caputo sent an email to Campbell that stated:

> As I stated in the interview, if multiple effective accommodations are possible, the employer gets to choose the accommodation which least affects operations. Your position is not a remote position, so if we can accommodate you on-site and effectively manage the migraine triggers which you described, then there is no need for remote work. The idea is that allowing you to wear a noise canceling headset and instructing other staff to contact you via messenger or email whenever possible should reduce the noise down to the same level it would be if you were teleworking. You indicated that moving to your old cubicle is the 'best option' and that you would give that a try and then let me know about the headset, which would suggest that you also find that to be an effective accommodation. If at any point in the future we need to reevaluate the accommodation for effectiveness, you can certainly let me know.

ECF No. 25-4 at 6–7.

The emails reveal it was unclear to Campbell what accommodation, if any, he was granted. *Id.* at 6–8. However, on June 17, 2021, Caputo clarified the status via email and advised Campbell that he could move back to his old cubicle. *Id.* at 6; *see also* Def.'s Ex. H, ECF No. 25-8 at 2 (Sept. 24, 2021 email from Caputo to another human resources employee stating the only accommodation accepted by Campbell was moving back to his old desk).

Then, in August 2021, Campbell reached out to Caputo and asked for an "ADA Reasonable Accommodation Form. Def.'s Ex. F, ECF No. 25-6 at 3. Campbell and Caputo engage in another series of emails where Caputo is inquiring about Campbell's medical condition, documentation related his condition,[8] and asking if there was anything else he needed at work.

---

[8] *See Hoang v. Wells Fargo Bank, N.A.*, 724 F. Supp. 2d 1094, 1105–06 (D. Or. 2010) (recognizing that under ADA, employers may periodically ask for reasonable documentation on the need for reasonable accommodations); *see also Brooks v. Agate Res., Inc.*, 2019 WL 2635594, at *7–8 (D. Or. Mar. 25, 2019), *adopted*, 2019 WL 2156955 (D. Or. May 14, 2019) (recognizing the employer may request that employee

7

*Id.* at 2–3. An email dated September 29, 2021 from Caputo to Campbell states:

> As to your ADA request, one thing for you to consider is that we are allowed to require that an accommodation be medically 'necessary.' Based on my assessment, the at-work accommodations I offered you after your first request for continued telework, which you declined (wearing ear phones and asking your colleagues to only contact you via electronic or telephonic means when possible), are a reasonable alternative to telework in your case, which makes telework unnecessary. We could also consider allowing you to listen to music with earbuds, if you don't want to try the noise canceling headphones because of the potential for your ears getting moist. If you want to discuss again what additional measures we could take to make your work area more comfortable for you, such as putting up an additional sliding barrier like you had mentioned, we can do so if you'd like. If you are willing to try the above alternatives to telework, please let me know.[9]

Def.'s Ex. G, ECF No. 25-7 at 2.

"The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Humphrey*, 239 F.3d at 1137. Based on the emails provided by UMC alone, the court cannot conclude that UMC failed to engage in the good-faith interactive process for a reasonable accommodation for Campbell when over the course of months, the defendant did engage with him. Although the emails show some delay in responding to a couple of emails from Campbell to Caputo, those delays were limited. Further, the evidence shows that Campbell was granted his requested accommodation of moving to a different cubicle. The emails reveal that Campbell's preferred accommodation was telework. But an "employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic*, 302 F.3d at 1089; *see also Moore v. Computer Assocs. Int'l, Inc.*, 653 F. Supp. 2d 955, 964 (D. Ariz. 2009) (the ADA does not guarantee an employee an accommodation of his or her choosing, only a reasonable one).

---

provide medical records to support reasonable accommodation requests and ask for additional information when consistent with business necessity).

[9] The court notes that there seems to be a missing email(s) from Campbell to Caputo. This exhibit only contains Caputo's responses to Campbell.

8

The email evidence, together with Campbell's admission that UMC did engage with him regarding a reasonable accommodation,[10] demonstrates that UMC engaged with Campbell to find a reasonable accommodation. *See Ellis v. Vial Fotheringham LLP*, 2019 WL 1553676, at *9–10 (D. Or. Feb. 1, 2019), *adopted*, 2019 WL 1553671 (D. Or. Mar. 5, 2019) (holding where employee failed to identify facts to rebut employer's evidence, employee did not create genuine issue of fact). Accordingly, UMC is entitled to summary judgment on Claim I.

**B.  Campbell fails to meet his burden on his retaliation claim.**

"To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Permanente Hosp. Inc.*, 389 F.3d 840, 849 (9th Cir. 2004); 42 U.S.C. § 12203(a). If the plaintiff makes a prima facie case of retaliation, "[t]he burden then shifts to the employer to provide a legitimate, [nonretaliatory] reason for the adverse employment action." *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). If the employer does so, the burden shifts back to plaintiff to demonstrate that the employer's articulated reason is a pretext for unlawful discrimination. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). A plaintiff may demonstrate pretext either directly, by showing that unlawful discrimination more likely than not motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002) (emphasis in original). The plaintiff's "evidence must be both specific and substantial to overcome the legitimate reasons put forth by" his employer. *Id.*

Campbell makes a prima facia showing of disability discrimination. He alleges he engaged in protected activity (seeking a reasonable accommodation for his medical condition[11]

---

[10] ECF No. 25-1 at 8–9.
[11] *See Pardi*, 389 F.3d at 850 (holding that pursuing one's rights under the ADA constitutes a protected activity) (citing *McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1238 (9th Cir. 1999) (stating that "vigorously

9

and filing a discrimination complaint), he was terminated after engaging in protected activity,[12] and there is a causal link between the two.[13] *See* Compl., ECF No. 3 at 5. UMC argues that Campbell was not terminated for discriminatory reasons, but rather for misconduct. ECF No. 25 at 3–4. As set forth in UMC's motion, Campbell was placed on a Performance Improvement Plan (PIP) in July 2021 due to subpar work performance such as an inability to prioritize and multitask, failing to complete work in a timely manner, and submitting inaccurate and incomplete work assignments. *Id.* at 3 (referencing Def.'s Ex. E, ECF No. 25-5). UMC further avers that in October of 2021, Campbell was suspended pending an investigation for concerns related to possible theft of time. *Id.* at 4 (citing Def.'s Ex. H, ECF No. 25-8). That investigation revealed the following:

(1) Campbell routinely conducted personal non-UMC business while at work and on the clock;
(2) Campbell forwarded an unsecured email containing protected health information to his personal email account and retained several personal documents on his work computer, including pornography;
(3) used UMC equipment while off the clock and without authorization; and
(4) kept non-UMC related work documents on his work computer including eBay mailing labels, real estate transactions, lease agreement, tax documents, condo association documents, another person's driver's license, expense records for various properties.

*See* Def.'s Ex. I, Case summary of investigation into Campbell, ECF No. 25-9 at 4–7.

---

asserting [one's] rights" under the ADA and other state and federal discrimination laws constitutes protected activity) and *Hashimoto v. Dalton*, 118 F.3d 671, 679–80 (9th Cir. 1997) (determining that meeting with an Equal Employment Opportunity counselor to discuss sex and race discrimination constitutes protected activity)).

[12] An act is considered an "adverse employment action," if it "materially" affects the compensation, terms, conditions or privileges of the plaintiff's employment. *See Jefferson v. Time Warner Cable Enters., LLC*, 584 F. App'x. 520, 522 (9th Cir. 2014). Termination is an adverse employment action.

[13] Causation may be inferred based on the temporal proximity between the protected activity and the alleged retaliation, *see Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003), but the connection in time must be "very close," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). This circuit has "required temporal proximity of less than three months between the protected activity and the adverse employment action for the employee to establish causation based on timing alone." *Mahoe v. Operating Eng'rs Local Union No. 3*, 2014 WL 6685812, at *8 (D. Haw. Nov. 25, 2014) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)); *see Miller v. Fairchild Indus. Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (two months sufficient). Here, Campbell had again engaged with UMC's HR department regarding his pursuit of a reasonable accommodation in September of 2021 and he was terminated in November of 2021.

Because UMC proffered legitimate, nondiscriminatory reasons for Campbell's termination, the burden shifts back to Campbell to demonstrate that UMC's articulated reason for termination is pretextual. Campbell fails to meet his burden. First, because Campbell failed to respond to the RFAs, he admits to certain acts of misconduct, including having pornography on his work computer, manipulating his work computer to make it appear like he was working when he was not, using his work equipment for personal, non-work-related tasks, and that he stole time from UMC during work hours. ECF No. 25-1 at 8–9. He also admitted that he was terminated because of his own actions. *Id.* at 9. Admissions aside, Campbell's opposition fails to provide specific and substantial evidence to overcome UMC's legitimate reasons for his termination. Instead, he only offers argument that he and another African American employee were discriminated against and makes an unsubstantiated argument that UMC did not provide discovery. ECF No. 29 at 2. This argument however shifts Campbell's alleged retaliation based on disability to being based on race,[14] and is wholly insufficient to meet his burden. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2022) (noting that courts refuse to find a genuine issue of fact where the only evidence presented is uncorroborated and self-serving). Accordingly, UMC's motion for summary judgment on Campbells retaliation claim (Claim II) is granted.

### C.  Campbell's race and age discrimination claims also fail.

Title VII makes it unlawful for employers to "fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination under Title VII for race

---

[14] Although the outcome is the same, the court notes the failure to respond to this argument potentially defeats Campbell's prima facia case of disability discrimination. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment); *Scott v. City of Phoenix*, 2011 WL 3159166, at *10 (D. Ariz. July 26, 2011) (failure to oppose statute of limitations argument constituted waiver); *Foster v. City of Fresno*, 392 F. Supp. 2d 1140, 1147 n.7 (E.D. Cal. 2005) ("[F]ailure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim.").

discrimination, a plaintiff must produce evidence of discriminatory treatment or impact. *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1484 (9th Cir. 1993). "A person suffers disparate treatment in his employment 'when he or she is singled out and treated less favorably than others similarly situated on account of race.'" *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (internal quotations omitted)). A plaintiff may demonstrate discrimination under a theory of disparate treatment. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012). Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Id.*

The Age Discrimination in Employment Act (ADEA) makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition applies to "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Like his Title VII claim, Campbell alleges he was discriminated under the ADEA under a theory of disparate treatment. *See* ECF No. 3 at 7–8. "Proof of disparate treatment requires a showing that the employer treats some people less favorably than others because of their age." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990).

Campbell alleges disparate treatment in his complaint. *See* ECF No. 3 at 6–7 (alleging PIPs are only given to Black employees and that employees of other races are treated more favorably). But Campbell's allegations alone are insufficient to survive summary judgment. *See, e.g., Carderella v. Napolitano*, 471 F. App'x 681, 682–83 (9th Cir. 2012) (affirming district court's finding that plaintiff failed to establish a prima facie case of employment discrimination where plaintiff acknowledged that he had "no information regarding the race or national origin of the individuals ultimately selected for the vacant . . . positions."). To prove a Title VII or ADEA violation, a plaintiff must produce direct evidence that their employer had a discriminatory

12

intent or motive. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005) ("Direct evidence is 'evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption' and 'typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer.'") (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)). Or in the absence of such evidence, a plaintiff may rely on the *McDonnell Douglas v. Green* framework. No matter the approach, the plaintiff retains the burden of persuasion. *See Rose*, 902 F.2d at 1420.

Campbell fails to produce direct evidence or to rely upon the *McDonnell Douglas* burden shifting framework. Indeed, Campbell failed to produce any evidence, direct or otherwise, to overcome summary judgment. Campbell's opposition to summary judgment makes conclusory arguments, such as he is likely the only disabled person in UMC's IT department and that UMC only administered PIPs to one other African American employee who ultimately quit. ECF No. 29 at 2, 3. Such argument is insufficient to overcome summary judgment. Further, Campbell's opposition is wholly silent as to how he was discriminated against based on his age. The party opposing summary judgment (Campbell) must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony," such as the mere arguments in an opposition, will not create a genuine issue of material fact. *Villiarimo*, 281 F.3d at 1061; *see also Weil v. Citizens Telecom Servs. Co. LLC*, 922 F.3d 993, 1003 (9th Cir. 2019) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (a plaintiff must produce evidence, not just pleadings or argument). The record is devoid of any discriminatory intent by UMC. The only admissible evidence shows that Campbell was terminated for performance issues, and Campbell admitted as much in his RFA. Because Campbell has not produced any evidence, direct or indirect, of race or age discrimination, Claims III, IV, and V fail and UMC is entitled to summary judgment on each.

IV.     Conclusion

IT IS HEREBY ORDERED that defendant UMC's motion for summary judgment [ECF No. 25] is GRANTED.

IT IS FURTHER ORDERED that UMC must file redacted versions of Exhibits C and D (ECF Nos. 25-3 and 25-4) by December 18, 2024. Once the reacted versions are filed as corrected images, UMC must file a notice indicating that it has complied with this order. The Clerk of Court will thereafter seal ECF No. 25-3 and ECF No. 25-4 pursuant to LR IC 6-1 and Fed. R. Civ. P. 5.2.

The Clerk of Court is kindly instructed to enter judgment accordingly and to close this case.

Dated: December 16, 2024

_____
Cristina D. Silva
United States District Judge